UNITED STATES FEDERAL COURT
DISTRICT OF MAINE

| | |
|---|---|
| MELISSA ATER, et. al, | ) |
| | ) |
| | ) |
|       Plaintiffs | ) |
| | )    19-CV-00568-JDL |
| v. | ) |
| | ) |
| BATH POLICE DEPARTMENT, | ) |
| et. al, | ) |
| | ) |

PLAINTIFFS' RESPONSE TO DEFENDANT MAINE
PRETRIAL SERVICES MOTION TO DISMISS

NOW COMES the Plaintiffs, by and through their attorney, and hereby respond and object to Defendant Maine Pre-Trial Services' Motion to Dismiss Plaintiffs' Complaint as follows:

Maine Pre-Trial Services (hereafter "MPS"), has filed a Motion to Dismiss the Plaintiffs' Complaint against it pursuant to Rule of Federal Procedure 12(b)(6) for failure to state a claim for which relief may be granted. Defendant's Motion is without merit and its own submissions prove that.

A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted." *See Foley v. Wells Fargo Bank, N.A.,* 772 F.3d 63, 71-72 (1st Cir. 2014). The court must take all of the pleaded factual allegations in the complaint as true. *Id.* A primary purpose of a Rule 12(b)(6) motion is to weed out cases that do not warrant reaching the laborious and expensive discovery process because, based on the factual scenario on which the case rests, the

plaintiff could never win. *Id.,* at 72. Further, plaintiffs are not required to submit evidence to defeat a Rule 12(b)(6) motion, but need only sufficiently allege in their complaint a plausible claim. *Id.* A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should succeed only when "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegation." *See Doran v. Mass. Tpk. Auth.*, 348 F.3d 315, 318 (1st Cir. 2003)(*quoting Gorski v. New Hampshire Dep't of Corr.*, 290 F.3d 466, 473 (1st. Cir. 2002)).

Defendant MPS argues that Plaintiffs have not set forth any facts sufficient to support their claims that MPS created a danger to them, creating liability for Plaintiffs' injuries. In support of its argument, Defendant MPS has submitted documents that it claims shows it did nothing to create any danger to Plaintiffs or that it was negligent in any manner. By submitting evidence outside of the pleadings, Defendant has arguably turned this into a summary judgment motion. *See Foley,* 772 F.3d at 72.

According to Defendant's own submissions, over the course of almost two weeks before Ater's actions against Plaintiffs, MPS repeatedly told Defendant Ater that he needed to report to MPS immediately, because he was in violation of his bail. The documents submitted by MPS, show that as early as March 21, 2019, twelve days before Ater began his actions toward Plaintiffs, MPS began its efforts to ensure compliance by Defendant Ater with his MPS contract.[1] When he did not report on March 21st as directed, he was already in violation of his contract, yet over the next almost two week period, all that MPS did was call Mr. Ater multiple times instructing him to report.

---

[1] This is information Plaintiffs did not possess until Defendant's Motion, which is why it was not alleged specifically in the Complaint.

According to Defendant's submission, on the day of March 27, 2019, MPS "repeatedly"[2] told Mr. Ater to immediately report to MPS and when he once again failed to report, MPS informed Mr. Ater that if he did not show up on April 1, 2019, MPS was going to be filing a violation memo, which obviously Defendant Ater knew would lead to his arrest. However, on April 1, 2019, when Mr. Ater did not show up, MPS again did not issue a bail violation memo, as it had said it would, but rather decided to wait to try and contact him on April 2nd. Only because MPS was notified on April 2nd that Mr. Ater had been on a "bender" did MPS finally act at that point. Interestingly, the memo from MPS to the District Attorney's office indicates that when MPS heard about the bender, it still did not seek to immediately report to the D.A., but rather, according to the memo, the MPS case manager again called and left Mr. Ater a message to come see him at the Two Bridges Jail by noon.

Nowhere is there any evidence of what exact message was left for Mr. Ater, but presumably, the message was consistent with prior messages in that MPS had information about him using drugs and not reporting and that he needed to report to the jail in Wiscasset, because he was in violation of his bail. Only when he failed to come again that day, did MPS finally contact the D.A.'s office. Without further discovery, the Court is left to speculate as to the contents of that message and whether the message contained a statement that MPS had asked for police officers to conduct a check on him due to concerns of drug use. In the throes of alleged heavy drug use, a message of officers going to his house to conduct a well check and a drug test would clearly have concerned Ater about his imminent arrest, whereby, once again creating danger to the Plaintiffs.

---

[2] Direct quote from Defendant's memo to the District Attorney's office.

The Complaint in this matter specifically alleges that after beginning his tortious actions on April 2, 2019 against Plaintiff Melissa Ater, in the presence of their daughter, Ater left Plaintiffs' residence with the Plaintiffs against their will sometime on the 2nd or 3rd of April. It is a completely reasonable inference based on the submission by Defendant, that after being told by MPS that officers were coming to look for him, Ater decided to remove himself, and the Plaintiffs, from the residence to avoid detection. In fact, the Complaint further alleges that Ater was successful in that endeavor, leading to further and significant harm to the Plaintiffs. It is quite reasonable to infer that MPS' warning to Ater created more danger to Plaintiffs, by assisting him in escaping detection.

Further, it would appear from the record that had it not been told about the bender, MPS would have continued to carry on in the same manner. For almost 2 weeks leading up to his kidnapping and attacks on Plaintiffs, MPS repeatedly told Mr. Ater that he was in violation of his bail, but continued to allow Mr. Ater to be free, whereby creating a danger to the Plaintiffs that arguably would not have happened had MPS acted sooner. It should also be noted that MPS admits it knew where Ater was over this time period, because Ater himself and Plaintiff Melissa Ater had told MPS he was at the hospital. Concerned about his failure to comply with his contract, MPS could have easily requested a check on him at that location. Its failure to do so combined with its repeated threats of violation to Ater is clear evidence of the danger MPS created with regard to the Plaintiffs.

Despite all of this, Defendant MPS incredibly claims it played no part in creating a danger to the Plaintiffs. That argument flies directly in the face of the very documentation

submitted by the Defendant MPS itself.[3]  In fact, if anything, the very documentation from Defendant in support of its motion, supports Plaintiffs' allegations that despite more than adequate reason to seek his bail revocation and arrest for almost two weeks prior to his attacks on the Plaintiffs, MPS did nothing other than continually threaten Mr. Ater that because he was in violation, it was going to seek to revoke his bail.  It is a very plausible argument that had Defendant done so when it first had reason to do so, Mr. Ater's arrest could have been secured sooner than April 2nd and that its repeated warnings to Mr. Ater and failure to act created a real and continuing danger to the Plaintiffs. At the very least, for purposes of dismissal and/or summary judgment and when viewing the pleadings and evidence in the light most favorable to Plaintiffs, it cannot be said that Plaintiffs have not met the very low threshold for surviving this Motion.

      WHEREFORE, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion and issue any further relief it deems just and proper.

Date: February 4, 2020                    /s/ *Verne Paradie, Jr.*
                                          Verne E. Paradie, Jr.
                                          Bar No. 8929
                                          Attorney for Plaintiffs
                                          217 Main Street, Suite 400
                                          Lewiston, ME 04240
                                          207-333-3583

---

[3] It is again important to point out that Plaintiffs had none of this information prior to Defendant's submission and is further evidence of why further discovery is necessary and that dismissal is not proper at this time.

## CERTIFICATE OF SERVICE

      I, Verne E. Paradie, Jr., Attorney for the Plaintiff, hereby certify that on February 4, 2020, I electronically filed Plaintiff's Objection and Response to Defendant Maine Pre-Trial Services' Motion to Dismiss with the Clerk of Court using the CM/ECF system, which will send notice to the following individuals:

John Wall, III:    jwall@monaghanleahy.com, jmacdonald@monaghanleahy.com
Edward Benjamin: ebenjamin@dwmlaw.com
Kasia Park: kpark@dwmlaw.com
Robert Kline:    RKline@KlineLaw.ME, klawassistant@KlineLaw.ME


Dated: February 4, 2020

                                        */s/ Verne E. Paradie, Jr.*
                                        Attorney for Plaintiffs
                                        217 Main Street, Suite 400
                                        Lewiston, ME 04240
                                        207-333-3583